## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY

**Christen Allen-Hayen and Ethan Hayen, individually and on behalf of all others similarly situated,**

**Plaintiffs**

**v.**

**COMMONWEALTH FEDERAL CREDIT UNION a/k/a COMMONWEALTH CREDIT UNION**

**Defendant.**

**Civil Action No. _____**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiffs, Christen Allen-Hayen and Ethan Hayen, individually, and on behalf of all others similarly situated (hereinafter "Plaintiffs") bring this Class Action Complaint against Defendant, Commonwealth Federal Credit Union a/k/a Commonwealth Credit Union ("Commonwealth CU" or "Defendant"), and allege, upon personal knowledge as to their own actions, and upon information and belief as to all other matters, as follows.

## INTRODUCTION

1.      Plaintiffs bring this class action to address Defendant's outrageous, illegal, and widespread practice of disclosing—without consent—the Nonpublic Personal Information[1] and

---

[1] The United States Congress defines "nonpublic personal information" as "personally identifiable financial information-- (i) provided by a consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed for the consumer; or (iii) otherwise obtained by the financial institution." The Gramm-Leach-Bliley Act, 15 U.S.C.A. § 6809(4)(A) ("GLBA").

Personally Identifiable Financial Information[2] (together, "Personal and Financial Information") of Plaintiffs and the proposed Class Members to third parties, including Google, LLC ("Google") and possibly others (collectively the "Third Parties") (in short, "the Disclosure").

2.    Commonwealth CU is a large financial institution which had "record asset growth, ending at $2.2 billion in total assets" at the end of 2023.[3] Commonwealth CU "offer[s] personalized, accessible financial services"[4] to its customers, including via its Digital Banking.[5] To provide these services, Commonwealth CU operates and encourages its customers to use its website, www.ccuky.org (the "Website"), on which customers can access their account information, Commonwealth CU's financial services, and apply for financial products like credit cards.

3.    Despite its unique position as a trusted credit union, Commonwealth CU used its Website to blatantly collect and disclose Consumers'[6] and Customers'[7] (collectively, "Customers")

---

[2] "Personally identifiable financial information means any information: (i) A consumer provides to [a financial institution] to obtain a financial product or service from [the financial institution]; (ii) About a consumer resulting from any transaction involving a financial product or service between [a financial institution] and a consumer; or (iii) [a financial institution] otherwise obtain[s] about a consumer in connection with providing a financial product or service to that consumer." 16 C.F.R. § 313.3(o)(1).

[3]    *Commonwealth Credit Union 2023 Annual Report*, https://www.ccuky.org/assets/files/EnSEjJ5c (last visited Mar. 21, 2025).

[4]    *About Commonwealth Credit Union*, https://www.ccuky.org/my-life/discover/about-us (last visited Mar. 21, 2025).

[5] *Digital Banking*, https://www.ccuky.org/digital-banking (last visited Mar. 21, 2025).

[6] The term "consumer" means "an individual who obtains or has obtained a financial product or service from [a financial institution] that is to be used primarily for personal, family, or household purposes, or that individual's legal representative." 16 C.F.R. § 313.3; 15 U.S.C.A. § 6809(9).

[7] "Customer means a consumer who has a customer relationship with [a financial institution]." 16 C.F.R. § 313.3. The term "time of establishing a customer relationship" shall . . . in the case of a financial institution engaged in extending credit directly to consumers to finance purchases of goods or services, mean the time of establishing the credit relationship with the consumer." 15 U.S.C.A. § 6809.

Personal and Financial Information to Third Parties uninvolved in the provision of financial services—entirely without their knowledge or authorization. Commonwealth CU did so by knowingly and secretly configuring and implementing code-based tracking devices ("trackers" or "tracking technologies") into its Website.

4.      Through these trackers, Commonwealth CU disclosed and continues to disclose Personal and Financial Information that Customers input into and accessed on Commonwealth CU's Website. This information includes, without limitation, membership application details, vehicle loan application details, credit card application details, including the fact that a user was on a certain page, that users clicked buttons and what URLs or webpages they led to, membership status, applicants' first name, applicants' last name, applicants' email addresses, the purpose of the user's application for credit, the method applicants use to fund their accounts, identification (like driver's license) information, and co-applicant information

5.      Upon information and belief, Commonwealth CU utilized data from trackers to improve and to save costs on its marketing campaigns, improve its data analytics, attract new customers, and generate sales. Commonwealth CU benefited from use of Customers' Personal and Financial Information. Commonwealth CU further allowed the Third Parties, who are uninvolved in Commonwealth CU's provision of financial services, to profit from its Disclosure of Customers' Private and Financial information. And the Third Parties used Customers' Personal and Financial Information for themselves and disclosed to fourth parties who also profited off of it. Google, for example, will use the data collected from Customers of Commonwealth CU to sell ads to fourth parties who will profit off of the use of that information

6.      Customers, like Plaintiffs and Class Members, simply do not anticipate that a trusted financial institution will send their Personal and Financial Information to hidden Third

Parties (who in turn share with fourth parties), all of whom profit off of it; likewise, when Plaintiffs and Class Members used Defendant's Website, they thought they were communicating exclusively with a trusted financial institution.

7.     At no time did Commonwealth CU disclose to Plaintiffs or Class Members that it was sharing their Personal and Financial Information with the Third Parties for third- and fourth-party use. Plaintiffs and Class Members never signed a written authorization permitting Defendant to send their Personal and Financial Information to the Third Parties who were uninvolved in the provision of financial services. And Commonwealth CU never allowed Plaintiffs or Class Members a real opportunity to opt-out of its Disclosure.

8.     Defendant owed a variety of duties, including common law, statutory, contractual, and regulatory duties, to keep Plaintiffs' and Class Members' Personal and Financial Information safe, secure, and confidential.

9.     Furthermore, by obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Personal and Financial Information, Defendant assumed legal and equitable duties to those individuals to protect and safeguard their information from unauthorized disclosure.

10.     The statutory and regulatory duties Commonwealth CU owed Customers include its obligations under federal law. For example, the GLBA requires that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C.A. § 6801. Under this federal law, financial institutions like Defendant are explicitly prohibited from disclosing a Customer's Personal and Financial Information without sufficient advance notification and opt-out opportunity. 15 U.S.C.A. § 6801, *et seq*.

11.     Commonwealth CU ignored all its duties and obligations, including the GLBA's prohibition, by disclosing Customers' Personal and Financial Information without proper advance notification and opt-out rights as required under the GLBA.

12.     Examples of "Personal and Financial Information" included in the GLBA are indistinguishable from the types of information Commonwealth CU disclosed to Google, including, among other things: (a) "[i]nformation a consumer provides to [Defendant] on an application to obtain a loan, credit card, or other financial product or service"; (b) "[t]he fact that an individual is or has been one of [Defendant] customers or has obtained a financial product or service from [Defendant]"; (c) "information about [Defendant's] consumer . . . disclosed in a manner that indicates that the individual is or has been [Defendant's] consumer"; (d) "information that a consumer provides to [Defendant] or that [Defendant] or [its] agent otherwise obtain[s] in connection with collecting on, or servicing, a credit account"; "[a]ny information that a consumer provides to [Defendant] or that [Defendant] or [its] agent otherwise obtain[s] in connection with collecting on, or servicing, a credit account; and (e) "any information [Defendant] collect[s] through an Internet 'cookie' (an information collecting device from a web server)." 16 C.F.R. 313.3(o)(2)(i).

13.     Commonwealth CU breached common law, statutory, and contractual obligations to Plaintiffs and Class Members by, *inter alia*, (i) failing to adequately review its marketing programs and web based technology to ensure its Website was safe and secure; (ii) failing to remove or disengage technology that was known and designed to share Personal and Financial Information; (iii) aiding, agreeing, and conspiring with the Third Parties to intercept communications sent and received by Plaintiffs and Class Members; (iv) failing to obtain the written consent of Plaintiffs and Class Members to disclose their Personal and Financial

Information to Third Parties for Third Party and fourth party use; (v) failing to protect Personal and Financial Information and take steps to block the transmission of Plaintiffs' and Class Members' Personal and Financial Information through the use of tracking technology; (vi) failing to warn Plaintiffs and Class Members; and (vii) otherwise failing to design and monitor its Website to maintain the confidentiality and integrity of its customers' Personal and Financial Information.

14.     Plaintiffs seeks to remedy these harms and brings causes of action of (I) Negligence; (II) Negligence Per Se; (III) Invasion Of Privacy (Intrusion Upon Seclusion); (IV) Breach Of Express And Implied Contract; (V) Unjust Enrichment (As Alternative To Contract Claims); (VI) Bailment; (VII) Violation of the Kentucky Consumer Protection Act, KRS § 367.110, *et seq*; (VIII) Declaratory Judgment; (IX) Violation of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. §§ 2511(1), *et seq*; (X) Violation of the Electronic Communications Privacy Act (Unauthorized Divulgence by Electronic Communications Service), 18 U.S.C. § 2511(3)(a); (XI) Violation of Title II of the Electronic Communications Privacy Act ("Stored Communications Act"), 18 U.S.C. § 2702, *et seq.*; (XII) Violation of the Computer Fraud and Abuse Act ("CFAA") 18 U.S.C. § 1030, *et seq.*; and (XIII) Violation of the Indiana Wiretap Act KRS § 526.010 *et seq.*

15.     Plaintiffs bring this action, individually and on behalf of all others similarly situated, for damages and equitable relief.

## **PARTIES**

16.     Plaintiff Christen Allen-Hayen is a natural person and citizen of Kentucky, where she intends to remain. Plaintiff Allen-Hayen has an account with Defendant and is a victim of Defendant's unauthorized Disclosure of Personal and Financial Information.

17.    Plaintiff Ethan Hayen is a natural person and citizen of Kentucky, where he intends to remain. Plaintiff Hayen has an account with Defendant and is a victim of Defendant's unauthorized Disclosure of Personal and Financial Information.

18.    Commonwealth CU is a state chartered credit union organized and existing under the laws of the State of Kentucky, with a headquarters in Frankfort, Kentucky.

19.    Commonwealth CU's Registered Agent for Service of Process is Karen Harbin, 417 High Street, Frankfort, KY 40601.

20.    Commonwealth CU is a financial institution, as that term is defined by Section 509(3)(A) of the GLBA, 15 U.S.C. § 6809(3)(A).

21.    Commonwealth CU has corporate offices and a principal place of business in Frankfort Kentucky.

## JURISDICTION AND VENUE

22.    This Court has personal jurisdiction over Defendant because Defendant operates, conducts, engages in, or carries on a business in this State in at least twenty-three different physical locations; it maintains corporate offices in this state; and committed tortious acts in this State.

23.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than one hundred (100) members in the proposed Classes, and at least one member of the Classes is a citizen of a state different from Defendant.

24.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because it arises under the laws of the United States. The Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367.

25.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and continue to occur in this District

## COMMON FACTUAL ALLEGATIONS

### A. Commonwealth CU Collects Personal and Financial Information Under the Guise of Protecting it

26.     Commonwealth CU services its customers through its "technology-driven solutions" which "includes a comprehensive adjustment of our digital infrastructure, which includes streamlining processes, in order to enhance overall member experience."[8]

27.     In portraying its commitment to Customers' privacy, Commonwealth CU represents that it "wants to ensure the protection of your personal and account information."[9]

28.     Defendant services its Customers on its Website via Mobile and Digital Banking. It encourages Customers to use its Website to, for example, "Get to Know Us," "Connect with Us," use Defendant's "Resources" like educational financial resources,[10] join Commonwealth CU,[11] apply for loans,[12] apply for credit cards,[13] apply for checking and savings accounts,[14] access online banking,[15] and much more.

---

[8]     *Commonwealth Credit Union 2023 Annual Report*, https://www.ccuky.org/assets/files/EnSEjJ5c (last visited Mar. 21, 2025).

[9] *Policies & Disclosures*, https://www.ccuky.org/policies-and-disclosures (last visited Mar. 21, 2025).

[10] *We CU Differently*, https://www.ccuky.org/my-life (last visited Mar. 24, 2025).

[11] *Create your account*, https://loans.ccuky.org/account-opening (last visited Mar. 24, 2025).

[12] *Loan Application*, https://www.ccuky.org/loan-application (last visited Mar. 24, 2025).

[13] *Credit Cards*, https://www.ccuky.org/my-life/borrow/credit-cards (last visited Mar. 24, 2025).

[14] *Checking Accounts in KY*, https://www.ccuky.org/my-life/save-and-spend/checking (last visited Mar. 24, 2025).

[15] *See the Website.*

29.     Defendant promotes the comprehensive functionality and use of its Website in service of its own goal of increasing profitability. In furtherance of that goal, Defendant purposely and secretly installed the Third Parties' online tracking technology onto its Website to gather information about Customers.

30.     Commonwealth CU utilized the information it collected to market its services and bolster its profits by surreptitiously diverting the information to Third Parties like Google.

31.     But Defendant did not only collect information for its own use; Commonwealth CU also shared—and continues to share—Customers' information, including Personal and Financial Information, with the unauthorized Third Parties who then use it for their own benefit and to benefit fourth parties who are even further removed from the Customers.

**B. Third Parties and Trackers: Collectors and Profiteers of Personal and Financial Information**

32.     The invisible Third Party online tracking technologies installed by Commonwealth CU on its Website gathers a vast assortment of Customer data. The installation of these trackers—and thus their transmission of data—is in Commonwealth CU's exclusive control.

33.     When an individual accesses a webpage containing online tracking technology from a Third Party, the trackers instantaneously and surreptitiously duplicate communications with that webpage and send them to the Third Party. The information travels directly from both the user's browser and the webpage owner's server and then on to the Third Party's server, based off instructions from the Third Party's tracker. The communications and information transmitted via these trackers are entirely in Defendant's control; Customers trust Commonwealth CU with the information they input on Commonwealth CU's Website, and Commonwealth CU is in complete and exclusive control of its Website and the data input therein. The transmission of Customers' data only occurs on webpages that contain tracking technology.

34.     Online tracking technologies may not be deleted from an individual's device; they are built into a webpage, and a webpage user has no control or warning over their presence or data collection. Third party trackers cause information to flow directly from the website user's browser and the website owner's server to the Third Party itself. A webpage user cannot prevent or even detect this transmission of data.

35.     Accordingly, without any knowledge, authorization, or action by a user, a website owner who has installed Third Party trackers is utilizing website source code to commandeer its users' computing devices and web browsers, causing them to invisibly re-direct the users' communications to Third Parties.

36.     In this case, Defendant employed the Third Party trackers to intercept, duplicate, and re-direct Plaintiffs' and Class Members' Personal and Financial Information to the Third Parties contemporaneously, invisibly, and without the customer's knowledge.

37.     Consequently, when Plaintiffs and Class Members visited Defendant's Websites and communicated their Personal and Financial Information, that information was simultaneously intercepted and transmitted to the Third Parties.

38.     The Third Party trackers do not provide any substantive content on Commonwealth CU's Website. Rather, their only purpose is to collect information to be used for the Third Party and fourth parties' marketing and sales purposes.

39.     The Google trackers allow Defendant to track and share with Google (1) who uses Commonwealth CU'S Website; (2) what is performed on the Website; (3) when Customers visit the Website; (4) where on the Website Customers perform these actions; and (5) how Customers navigate through the Website to perform these actions. Google gathers this information using trackers embedded on Commonwealth CU'S Website and generates corresponding reports.

Google Tag Manager, Google Analytics, and DoubleClick are part of the suite Google uses to collect all of this.  Google's collection of this data "enables advertisers to more effectively create, manage and grow high-impact digital marketing campaigns."

### C. Commonwealth CU Used Trackers to Unauthorizedly Disclose Personal and Financial Information

40.     On information and belief, Commonwealth CU installed these trackers, through which Commonwealth CU transmitted Customers' communications with Commonwealth CU's website and thus their Personal and Financial Information to the Third Parties without Customers' knowledge or authorization.

41.     On information and belief, at least as recently as October 24, 2024, Commonwealth CU has had tracking technologies installed on its Website.

42.     Accordingly, Commonwealth CU disclosed its Customers'—including Plaintiffs' and the Class Members'—data and Personal and Financial Information to the Third Parties like Google, at least up to October 24, 2024.

43.     By way of example, at least as recently as October 24, 2024, Commonwealth CU's banking portal included a robustly configured Google Analytics tracker. This tracker reported all page views, button clicks, and scrolls.

### D. Commonwealth CU Maintains Ambiguous, Disingenuous, and Deceptive Privacy Policies That Fail to Sufficiently Disclose, Notify, Or Provide Opportunity to Opt-Out of the Disclosure

44.     Customers never consented, agreed, authorized, or otherwise permitted Defendant to intercept their Personal and Financial Information or to use or disclose it for marketing and profit purposes. Customers were never provided with any written notice that Defendant disclosed their Personal and Financial Information to Third Parties (who then allowed fourth parties to use it for profit), nor were they provided means of opting out of such disclosures.

45.    Customers relied on Defendant to keep their Personal and Financial Information confidential and securely maintained and to use this information only for the purpose of providing legitimate financial services. Customers relied on Defendant to make only authorized disclosures of this information.

46.    Furthermore, Defendant actively misrepresented it would preserve the security and privacy of Customers' Personal and Financial Information.

47.    The contracts that Commonwealth CU has with its Customers include Commonwealth CU's "Privacy Notice,"[16] and "Terms & Conditions"[17] which are maintained on its Website (collectively, "Privacy Policies").

48.    In its Terms & Conditions, Commonwealth CU tells its Customers: "When using Mobile Banking services, we collect only the information necessary to perform the transactions you request."[18]

49.    Commonwealth CU promises its customers: "We will maintain the confidentiality and privacy of your account information in accordance with our privacy policy as stated on our website at: www.ccuky.org."[19]

50.    Commonwealth CU represents that it discloses information in four "limited circumstances:"

---

[16] *Commonwealth Credit Union Privacy Notice*, https://www.ccuky.org/our-privacy-notice (last visited Mar. 24, 2025); also available at https://www.ccuky.org/assets/files/x1xYhdi1/r/43405479_msa_-_our_privacy_notice_-_commonwealth_fcu_-_10-08-2024_1.pdf (last visited Mar. 24, 2025) ("Privacy Notice") (attached as Exhibit A).

[17]    *Mobile Banking Services Terms & Conditions*, https://www.ccuky.org/assets/files/8NL6LsCM (last visited Mar. 24, 2025) ("*Terms & Conditions*") (attached as Exhibit B).

[18] *Id.*

[19] *Id.*

- As necessary to complete transfers;

- To verify the existence of sufficient funds to cover specific transactions upon the request of a third party merchant;

- To comply with government agency or court orders;

- If you give us your express permission.

51.     In its Privacy Notice, Commonwealth CU tells its Customers that "[f]ederal law gives consumers the right to limit . . . sharing" and that "[w]e do not share" Customers' personal information "[f]or our affiliates' everyday business purposes"; "[f]or our affiliates to market to you" or "[f]or nonaffiliates to market to you.[20]

52.     Indeed, Customers cannot "limit [] sharing" for those purposes, because Commonwealth CU "do[es] not share."[21]

53.     Commonwealth CU further represents that "your mobile banking app also may periodically collect, transmit, and use geolocation information to support features that prevent fraudulent card use and alerts, but **only if you expressly authorize collection of such information**."[22]

54.     Nowhere in any of Commonwealth CU's Privacy Policies does Commonwealth CU disclose its use of Customer Personal and Financial Information for Third Party and fourth party marketing.

55.     Customers reasonably understand that Commonwealth CU will securely maintain the Personal and Financial Information they entrusted to it and protect that information from being shared or utilized by Third Parties (and fourth parties) that have nothing to do with Commonwealth

---

[20] *See Privacy Notice.*
[21] *Id.*
[22] *Id.*

13

CU or its services. Commonwealth CU's Privacy Policies only reinforced this reasonable understanding.

56. Commonwealth CU's failure to safeguard the privacy of Customers' Personal and Financial Information as agreed in its Privacy Policies is even more egregious here, as Commonwealth CU also fails to provide Customers with sufficient opportunity to opt out of disclosure to affiliates or non-affiliates. Commonwealth CU does not provide its Customers with any way to opt out of its disclosures.

57. Even if a Customer were to try to call Commonwealth CU, visit them in person, or request through some other means that Commonwealth CU stop or otherwise limit the sharing of their Personal and Financial Information, the trackers are active on Commonwealth CU's Website indiscriminately, regardless of what an individual Customer requests. When Customers visit Commonwealth CU's Website, the Third Party trackers instantaneously send data from Customers that visit Commonwealth CU's Website. Any opt-out request a Customer makes is thus entirely ineffective against Third Party trackers.

**E. Commonwealth CU Violated the GLBA, FTC Standards, and Related Regulations**

58. As a financial institution, Commonwealth CU is subject to the GLBA. 15 U.S.C. § 6809(3)(A) (a "financial institution" is "any institution the business of which is engaging in financial activities...").

59. Pursuant to the GLBA, "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

60. The FTC has interpreted Section 5 of the FTC Act, 15 U.S.C. § 45, to include compliance with the GLBA Privacy Rule, 16 C.F.R. § 313.1 *et seq*. The FTC consistently enforces

the GLBA Privacy Rule, as failure to comply with the GLBA Privacy Rule is an unfair act or practice prohibited by Section 5 of the FTC Act.[23]

61.    The GLBA Privacy Rule is a regulation that "governs the treatment of nonpublic personal information about consumers by the financial institutions." 16 C.F.R. § 313.1 *et seq*.

62.    Pursuant to the GLBA Privacy Rule, "[a] financial institution must provide a notice of its privacy policies and practices with respect to both affiliated and nonaffiliated third parties, and allow the consumer to opt out of the disclosure of the consumer's nonpublic personal information to a nonaffiliated third party if the disclosure is outside of the exceptions."[24] Defendant consistently fails to do this.

63.    The GLBA Privacy Rule, defines sensitive information that should not be indiscriminately disclosed:

> (n)    (1) Nonpublic personal information means:
> > (i) Personally identifiable financial information; and
> > (ii) Any list, description, or other grouping of consumers (and publicly available information pertaining to them) that is derived using any personally identifiable financial information that is not publicly available.…
> > (3) Examples of lists—
> > (i) Nonpublic personal information includes any list of individuals' names and street addresses that is derived in whole or in part using personally identifiable financial information (that is not publicly available), such as account numbers.…
>
> (o)    (1) Personally identifiable financial information means any information:
> > (i) A consumer provides to you to obtain a financial product or service from you;
> > (ii) About a consumer resulting from any transaction involving a financial product or service between you and a consumer; or

---

[23] *See How to Comply with the Privacy Rule*, https://www.ftc.gov/business-guidance/resources/how-comply-privacy-consumer-financial-information-rule-gramm-leach-bliley-act (last visited Aug. 22, 2024) ("The FTC may bring enforcement actions for violations of the Privacy Rule.").

[24] *See* FTC, *Financial Privacy Rule*, https://www.ftc.gov/legal-library/browse/rules/financial-privacy-rule (last visited August 8, 2024).

(iii) You otherwise obtain about a consumer in connection with providing a financial product or service to that consumer.

(2) Examples—

(i) Information included. Personally identifiable financial information:

(A) Information a consumer provides to you on an application to obtain a loan, credit card, or other financial product or service;

(B) Account balance information, payment history, overdraft history, and credit or debit card purchase information;

(C) The fact that an individual is or has been one of your customers or has obtained a financial product or service from you;

(D) Any information about your consumer if it is disclosed in a manner that indicates that the individual is or has been your consumer;

(E) Any information that a consumer provides to you or that you or your agent otherwise obtain in connection with collecting on, or servicing, a credit account;

(F) Any information you collect through an Internet "cookie" (an information collecting device from a web server); and

(G) Information from a consumer report.

16 C.F.R. § 313.3

64.    The information that Defendant disclosed to Third Parties via trackers is "nonpublic personal information" under the GLBA and related regulations. 16 C.F.R. § 313.3.

65.    Defendant has utterly failed to meet its privacy obligations under the GLBA: it has explicitly disclosed Customers' nonpublic personal information and Personal and Financial Information to Third Parties for marketing and advertisement, including for Third Party and fourth party advertising use, and refused to allow customers to meaningfully limit this sharing.

66.    Defendant fails to meet its notice obligations under the GLBA. "[A] financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title." 15 U.S.C.A. § 6802. As outlined at length above, Defendant's Privacy Policies fail to put Customers on notice as required here and

actually promise that Customers' Personal and Financial Information will not be shared with Third Parties (and fourth parties) for targeted advertising purposes.

67.    For example, by stating in its Privacy Policies that Defendant maintains the confidentiality of Customers' Personal and Financial Information and **does not** inform Customers that it sells their Personal and Financial Information to Third Parties for their use in their own advertising and marketing, the Privacy Policies fail to properly disclose:

> (1) the policies and practices of the institution with respect to disclosing nonpublic personal information to nonaffiliated third parties . . . including []the categories of persons to whom the information is or may be disclosed, other than the persons to whom the information may be provided [and] the policies and practices of the institution with respect to disclosing of nonpublic personal information of persons who have ceased to be customers of the financial institution . . .
> (2) the categories of nonpublic personal information that are collected by the financial institution; [and]
> (3) the policies that the institution maintains to protect the confidentiality and security of nonpublic personal information.

15. U.S.C.A. § 6803.

68.    As detailed above, Defendant also fails to meet its opt out obligations under the GLBA. The GLBA Privacy Rule requires financial institutions to, for example, "provide an opt out notice" to Customers, which notice "must state…[t]hat the consumer has the right to opt out of that disclosure [and] [a] reasonable means by which the consumer may exercise the opt out right." 16 C.F.R. § 313.7. Under the GLBA, Defendant:

> may not disclose nonpublic personal information to a nonaffiliated third party unless—
> (A) [it] clearly and conspicuously discloses to the consumer. . . that such information may be disclosed to such third party;
> (B) *the consumer is given the opportunity*, before the time that such information is initially disclosed, *to direct that such information not be disclosed to such third party*; and
> (C) the consumer is given an explanation of how the consumer can exercise that nondisclosure option.

15 U.S.C.A. § 6802 (emphasis added).

69.     Defendant fails to meet its opt out obligations because Customers are not provided **any** opportunity before disclosure to direct the nondisclosure of their information—as described above, Defendant instantaneously discloses information when Customers visit its Website.

70.     Defendant further fails to meet its opt out obligations because it does not provide Customers with any nondisclosure option.

71.     Defendant still further fails to meet its opt out obligations because it fails to provide Customers with reasonable means of opting out. The GLBA Privacy Rule provides "examples of reasonable opportunity to opt out":

> (i) By mail. You mail the notices required in paragraph (a)(1) of this section to the consumer and allow the consumer to opt out by mailing a form, calling a toll-free telephone number, or any other reasonable means within 30 days from the date you mailed the notices.
> (ii) By electronic means. A customer opens an on-line account with you and agrees to receive the notices required in paragraph (a)(1) of this section electronically, and you allow the customer to opt out by any reasonable means within 30 days after the date that the customer acknowledges receipt of the notices in conjunction with opening the account.
> (iii) Isolated transaction with consumer. For an isolated transaction, such as the purchase of a money order by a consumer, you provide the consumer with a reasonable opportunity to opt out if you provide the notices required in paragraph (a)(1) of this section at the time of the transaction and request that the consumer decide, as a necessary part of the transaction, whether to opt out before completing the transaction.

16 C.F.R. § 313.10.

72.     Defendant provides no "opt-out" opportunity whatsoever.

73.     Were a Customer to independently attempt to opt out, Defendant fails to comply with its opt out obligations because it fails to fully abide by its Customers' opt out. Calling or visiting Defendant to inform Defendant that a Customer wishes to opt out cannot actually opt a Customer out of sharing their information. This is not a "reasonable" means of opting out as

outlined in the GLBA Privacy Rule. And anyway, Third Party trackers will continue to instantaneously send data from Customers visiting Defendant's Website. Customers have **no** option to fully opt out of Disclosures to Third Parties or targeted advertising. This both fails to provide Customers with actual opportunity to opt out, and fails to abide by the opt out request, since Third Party trackers will continue to instantaneously send data from Customers visiting Defendant's Website. Customers have **no** option to fully opt out.

74.     By perpetually disclosing its customers' Personal and Financial Information to third parties without consent, Defendant failed and continues to fail to meet its obligations under the GLBA, FTC standards, and related regulations, to establish appropriate standards and safeguards relative to Customers' Personal and Financial Information.

**F. Plaintiffs' Experiences**

75.     Plaintiffs Christen Allen-Hayen has a personal account with Commonwealth CU and is Commonwealth CU's Customer. She uses Commonwealth CU's online banking portal and mobile app.

76.     Plaintiffs Ethan Hayen has a personal account with Commonwealth CU and is Commonwealth CU's Customer. He uses Commonwealth CU's online banking portal and mobile app.

77.     Plaintiffs used Defendant's Website to facilitate their financial services with Defendant and inputted Personal and Financial Information into Defendant's Website at Defendant's direction and encouragement.

78.     Plaintiffs Allen-Hayen applied for Defendant's services sometime in or around 2014 or 2015, when she opened a personal checking account. She closed that account and reopened it in 2024.

79.     Plaintiffs Hayen applied for Defendant's services sometime in or around June 2024.

19

80.     Shortly after Plaintiffs used Defendant's Website to apply for Commonwealth CU's services, they have regularly received advertising on their social media accounts for financial advertisements for other banks, credit cards, investment platforms, mortgage refinancing, banking, investments, and other credit unions.

81.     Furthermore, since opening a Commonwealth CU account, Plaintiffs Hayen has received 5-10 text or email alerts every day that his account has been accessed by a third party. Since January 4, 2025 alone, Plaintiffs Hayen has received 396 messages or emails saying that his account has been accessed, when Plaintiffs Hayen did not access his account. Defendant represents to Plaintiffs Hayen that it they have no idea what is going on with these messages or unauthorized access.

82.     Similarly, Plaintiffs Allen-Hayen receives notifications that her account has been accessed in the middle of the night, when she did not do so. She closed her account with them and reopened it in 2024. She continues to get notifications that unauthorized third parties have accessed her Commonwealth CU account.

83.     Plaintiffs never intended to allow Third Parties to access their accounts or Personal and Financial Information.

84.     At no point did Customers like Plaintiffs sign any written authorization permitting Defendant to send their Personal and Financial Information to Third Parties (or fourth parties) uninvolved in providing them with Defendant's financial services.

85.     Plaintiffs reasonably expected that their communications with Commonwealth CU were confidential, solely between them and Commonwealth CU, and that, as such, those communications and any Personal and Financial Information submitted would not be transmitted to or intercepted by a third party (or used by a fourth party).

86.     Plaintiffs provided their Personal and Financial Information to Defendant and trusted that the information would be safeguarded according to Commonwealth CU's promises and the law.

87.     Plaintiffs never intended to sell their Personal and Financial Information, nor would they have permitted it to be made available for sale on the resale market.

88.     Plaintiffs never intended to let Commonwealth CU benefit from their Personal and Financial Information.

89.     Through the systematic data sharing process described in this complaint, Plaintiffs' interactions with Commonwealth CU's Website were disclosed to Third Parties, including Google. Plaintiffs did not consent to those disclosures.

90.     On information and belief, through its use of Third Party trackers on its Website, Defendant disclosed to Third Parties information Plaintiffs provided to Commonwealth CU as a financial institution and resulting from transactions Plaintiffs made to obtain financial services related to their personal checking accounts.

91.     By failing to receive the requisite consent, Commonwealth CU breached confidentiality and unlawfully disclosed Plaintiffs' Personal and Financial Information.

92.     Plaintiffs would not have submitted their information to Commonwealth CU if they had known it would be shared with Third Parties and fourth parties.

93.     As a result of Commonwealth CU's Disclosure of Plaintiffs' Personal and Financial Information via the Google trackers and other tracking technologies to Third Parties (and fourth parties) without authorization, Plaintiffs suffered the following injuries:

a. Loss of privacy; unauthorized disclosure of their Personal and Financial Information; unauthorized access of their Personal and Financial Information by Third Parties;

b. Unauthorized access of their personal checking accounts;

c. Commonwealth CU benefited from the use of Plaintiffs' Personal and Financial Information without sharing that benefit with Plaintiff;

d. Plaintiffs now receive targeted advertisements from Third and Fourth Parties on social media, reflecting their Personal and Financial Information that was improperly disclosed and used;

e. Plaintiffs paid Commonwealth CU for financial services, and the services they paid for included reasonable privacy and data security protections for their Personal and Financial Information, but due to Defendant's Disclosure, Plaintiffs did not receive the privacy and security protections for which they paid;

f. The portion of Commonwealth CU's revenues and profits attributable to collecting Plaintiffs' Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties);

g. The portion of Commonwealth CU's savings in marketing costs attributable to collecting Plaintiffs' Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties);

h. The portion of Commonwealth CU's revenues and profits attributable to serving and monetizing advertisements directed to Plaintiffs as a result of collecting Plaintiffs' Personal and Financial Information without authorization and sharing it with Third Parties (and fourth parties);

22

i.   Value to Plaintiffs of surrendering their choice to keep their Personal and Financial Information private and allowing Commonwealth CU to track their data;

j.   Embarrassment, humiliation, frustration, and emotional distress;

k.   Decreased value of Plaintiffs' Personal and Financial Information;

l.   Lost benefit of the bargain;

m.   Increased risk of future harm resulting from future use and disclosure of their Personal and Financial Information; and

n.   Statutory damages

## **TOLLING, CONCEALMENT, AND ESTOPPEL**

94.    The applicable statutes of limitation have been tolled as a result of Commonwealth CU's knowing and active concealment and denial of the facts alleged herein.

95.    Commonwealth CU seamlessly incorporated trackers into its Website while providing Customers using those platforms with no indication that their Website usage was being tracked and transmitted to Third Parties. Commonwealth CU knew that its Website incorporated trackers, yet it failed to disclose to Plaintiffs and Class Members that their sensitive Personal and Financial Information would be intercepted, collected, used by, and disclosed to Third Parties.

96.    Plaintiffs and Class Members could not with due diligence have discovered the full scope of Commonwealth CU's conduct, because there were no disclosures or other indication that they were interacting with websites employing tracking technology to unauthorizedly disclose their Personal and Financial Information.

97.    All applicable statutes of limitation have also been tolled by operation of the discovery rule and the doctrine of continuing tort. Commonwealth CU's illegal interception and disclosure of Plaintiffs' and the Class's Personal and Financial Information has continued unabated. What is more, Commonwealth CU was under a duty to disclose the nature and

significance of its data collection practices but did not do so. Commonwealth CU is therefore estopped from relying on any statute of limitations defense.

## **CLASS ACTION ALLEGATIONS**

98.     Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all other similarly situated persons pursuant to Fed. R. Civ. P. 23.

99.     Plaintiffs seek to represent the following classes:

100.     **Nationwide Class**: All individuals in the United States whose Personal and Financial Information was disclosed by Defendant to Third Parties through Defendant's Website's tracking technology without authorization.

101.     **Kentucky Subclass**: All individuals in Kentucky whose Personal and Financial Information was disclosed by Defendant to Third Parties through Defendant's Website's tracking technology without authorization.

102.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

103.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

104.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23(a)(1)-(4).

105.     Numerosity: Class Members are so numerous and geographically dispersed that joinder of all members is impracticable. Upon information and belief, there likely millions of individuals throughout the United States whose Personal and Financial Information has been

improperly used or disclosed by Defendant, and the Classes are identifiable within Defendant's records.

106.    <u>Ascertainability</u>. Class Members are readily identifiable from information in Defendant's possession, custody, and control.

107.    <u>Commonality and Predominance</u>: Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

108.    Whether Defendant disclosed Class Members' Personal and Financial Information to Third Parties;

109.    Whether Class Members consented to Defendant's disclosure of their Personal and Financial Information;

110.    Whether Defendant owed duties to Plaintiffs and Class Members to protect their Personal and Financial Information;

111.    Whether Defendant breached its duty to protect Plaintiffs' and Class Members' Personal and Financial Information;

112.    Whether Defendant's disclosure of Plaintiffs' and Class Members' Personal and Financial Information to Third Parties violated federal, state and local laws, or industry standards;

113.    Whether Defendant's failure to allow Customers a meaningful opportunity to opt out of sharing with Third Parties violated federal, state and local laws, or industry standards;

114.    Whether Defendant's conduct resulted in or was the actual cause of the disclosure of Plaintiffs' and Class Members' and Personal and Financial Information;

115.    Whether Defendant's conduct resulted in or was the proximate cause of the disclosure of Plaintiffs' and Class Members' Personal and Financial Information;

116.     Whether Defendant has a contractual obligation to protect Plaintiffs' and Class Members' Personal and Financial Information and whether it complied with such contractual obligation;

117.     Whether Defendant has a duty sounding in bailment to protect Plaintiffs' and Class Members' Personal and Financial Information and whether it complied with such obligation;

118.     Whether Defendant has a duty of confidence and whether it complied with such obligation;

119.     Whether Defendant's conduct amounted to violations of state consumer protection statutes;

120.     Whether Defendant's conduct amounted to violations of state and federal wiretap statutes;

121.     Whether Defendant's conduct amounted to violations of other Kentucky state laws;

122.     Whether Defendant should retain Plaintiffs' and Class Members' valuable Personal and Financial Information; and

123.     Whether, as a result of Defendant's conduct, Plaintiffs and Class Members are entitled to injunctive, equitable, declaratory and/or other relief, and, if so, the nature of such relief.

124.     Defendant has engaged in a common course of conduct toward Plaintiffs and the Class Members, in that the Plaintiffs' and Class Members' data was stored on the same computer system and unlawfully disclosed and accessed in the same way. As set forth above, the common issues arising from Defendant's conduct affecting Class Members predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

125.    <u>Typicality</u>: Plaintiffs' claims are typical of those of other Class Members because all had their Personal and Financial Information compromised as a result of Defendant's use and incorporation of the Google tracker and other tracking technology.

126.    <u>Policies Generally Applicable to the Classes</u>: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

127.    <u>Adequacy</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages Plaintiffs have suffered is typical of other Class Members. Plaintiffs have also retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously.

128.    <u>Superiority and Manageability</u>: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually

afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

129.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged. If the class action device were not used, Defendant would necessarily gain an unconscionable advantage because it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources. Moreover, the costs of individual suits could unreasonably consume the amounts that would be recovered, whereas proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged. Finally, individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

130.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

131.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

132.    Unless a Class-wide injunction is issued, Defendant may continue in its unlawful use and disclosure and failure to properly secure the Personal and Financial Information of Plaintiffs and the Class Members, Defendant may continue to refuse to provide proper notification

to and obtain proper consent from Class Member, and Defendant may continue to act unlawfully as set forth in this Complaint.

133.    Moreover, Defendant has acted or refused to act on grounds generally applicable to the Classes, and, accordingly, final injunctive or corresponding declaratory relief regarding the whole of the Classes is appropriate.

134.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to the following:

135.    Whether Defendant owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal and Financial Information;

136.    Whether Defendant breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Personal and Financial Information;

137.    Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to the disclosure of customer information;

138.    Whether Defendant was negligent and/or negligent *per se*;

139.    Whether an implied contract existed between Defendant on the one hand, and Plaintiffs and Class Members on the other, and the terms of that contract;

140.    Whether Defendant breached the contract;

141.    In the alternate, whether Defendant was unjustly enriched;

142.    Whether a bailment existed between Defendant on the one hand, and Plaintiffs and Class Members on the other;

143.    Whether Defendant breached its bailment duty;

144.    Whether Defendant adequately and accurately informed Plaintiffs and Class Members that their Personal and Financial Information had been used and disclosed to Third Parties and used for Third Party and fourth party benefit;

145.    Whether Defendant adequately provided opt-out measures;

146.    Whether Defendant abided by Plaintiffs' and Class Members' opt-out requests;

147.    Whether Defendant failed to implement and maintain reasonable security procedures and practices;

148.    Whether Defendant invaded Plaintiffs and the Class Members' privacy;

149.    Whether Defendant breached its implied duty of confidentiality; and,

150.    Whether Plaintiffs and the Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendant's wrongful conduct

## COUNT I
## NEGLIGENCE
### (On Behalf of Plaintiffs and the Classes)

151.    Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

152.    Plaintiffs and Class Members submitted sensitive nonpublic personal information, including Personal and Financial Information, when accessing Commonwealth CU's Website.

153.    Defendant owed to Plaintiffs and Class Members a duty to exercise reasonable care in handling and using Plaintiffs' and Class Members' Personal and Financial Information in its care and custody, including implementing industry-standard privacy procedures sufficient to reasonably protect the information from the disclosure and unauthorized transmittal and use of Personal and Financial Information that occurred.

154.    Defendant's duties to keep the nonpublic personal information, including Personal and Financial Information, confidential also arose under the GLBA, which imposes "an affirmative

and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

155.    Defendant's duties to keep the nonpublic personal information, including Personal and Financial Information, confidential also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including the unfair practice of failing to keep the nonpublic personal information confidential.

156.    Defendant acted with wanton and reckless disregard for the privacy and confidentiality of Plaintiffs' and Class Members' Personal and Financial Information by disclosing and providing access to this information to the Third Parties for the financial benefit of the Third Parties (and fourth parties) and Defendant.

157.    Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's disclosure of their Personal and Financial Information to benefit Third Parties (and fourth parties) and Defendant. Defendant actively sought and obtained Plaintiffs' and Class Members' Personal and Financial Information. And Defendant knew or should have known that by integrating tracking technology on its Website that Plaintiffs' and Class Members' nonpublic personal information, including Personal and Financial Information, would be disclosed to the Third Parties (and used by the fourth parties).

158.    Personal and Financial Information is highly valuable, and Defendant knew, or should have known, the harm that would be inflicted on Plaintiffs and Class Members by disclosing their Personal and Financial Information to the Third Parties. This disclosure was of benefit to the

Third Parties (and fourth parties) and Defendant by way of data harvesting, advertising, and increased sales.

159.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers in the handling and securing of Personal and Financial Information of Plaintiffs and Class Members. This failure actually and proximately caused Plaintiffs' and Class Members' injuries.

160.    As a direct, proximate, and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or imminently will suffer injury and damages, including monetary damages, inappropriate advertisements and use of their Personal and Financial Information for advertising purposes, inappropriate use of their Personal and Financial Information to access their Commonwealth CU accounts, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

161.    Defendant's breach of its common-law duties to exercise reasonable care and negligence, directly and proximately caused Plaintiffs' and Class Members' actual, tangible, injury-in-fact and damages, including, without limitation: the unauthorized access of their Personal and Financial Information by Third Parties (and fourth parties); improper disclosure of their Personal and Financial Information; receipt of targeted advertisements reflecting private financial information; lost benefit of their bargain; lost value of their Personal and Financial Information and diminution in value; embarrassment, humiliation, frustration, and emotional distress; lost time and money incurred to mitigate and remediate the effects of use of their information, as to targeted advertisements that resulted from and were caused by Defendant's negligence; value to Plaintiffs and the Class Members of surrendering their choices to keep their Personal and Financial Information private and allowing Defendant to track their data; increased risk of future harm

resulting from future use and disclosure of Plaintiffs' and the Class Members' Personal and Financial Information; and other injuries and damages as set forth herein. These injuries are ongoing, imminent, immediate, and continuing.

162.    Defendant's negligence directly and proximately caused the unauthorized access and Disclosure of Plaintiffs' and Class Members' Personal and Financial Information, and as a result, Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct. Plaintiffs and Class Members seek actual and compensatory damages, and all other relief they may be entitled to as a proximate result of Defendant's negligence.

163.    Plaintiffs and Class Members seek to recover the value of the unauthorized access to their Personal and Financial Information resulting from Defendant's wrongful conduct. This measure of damages is analogous to the remedies for unauthorized use of intellectual property. Like a technology covered by a trade secret or patent, use or access to a person's personal information is non-rivalrous—the unauthorized use by another does not diminish the rights-holder's ability to practice the patented invention or use the trade-secret protected technology. Nevertheless, a Plaintiffs may generally recover the reasonable use value of the intellectual property—i.e., a "reasonable royalty" from an infringer. This is true even though the infringer's use did not interfere with the owner's own use (as in the case of a non-practicing patentee) and even though the owner would not have otherwise licensed such intellectual property to the infringer. A similar royalty or license measure of damages is appropriate here under common law damages principles authorizing recovery of rental or use value. This measure is appropriate because (a) Plaintiffs and Class Members have a protectible property interest in their Personal and Financial Information; (b) the minimum damages measure for the unauthorized use of personal

property is its rental value; and (c) rental value is established with reference to market value, i.e., evidence regarding the value of similar transactions

164.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

**COUNT II**
**NEGLIGENCE *PER SE***
**(On Behalf of Plaintiffs and the Classes)**

165.    Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

166.    Plaintiffs bring this negligence *per se* count in the alternative to the common law negligence claim.

167.    Pursuant to the laws set forth herein, including the FTC Act, the GLBA, and state law, Defendant was required by law and industry standards to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' and Class Members' Personal and Financial Information.

168.    Plaintiffs and Class Members are within the class of persons that these statutes and rules were designed to protect.

169.    Defendant had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiffs' and Class Members' Personal and Financial Information.

170.    Defendant owed a duty to timely and adequately inform Plaintiffs and Class Members, in the event of their Personal and Financial Information being improperly disclosed to unauthorized Third Parties.

171.    It was not only reasonably foreseeable, but it was intended, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Personal and Financial Information

in compliance with applicable laws would result in unauthorized Third Parties and fourth parties gaining access to Plaintiffs' and Class Members' Personal and Financial Information, and resulting in Defendant's liability under principles of negligence *per se*.

172.    Defendant violated its duty under Section 5 of the FTC Act, the GLBA, and/or state law by failing to use reasonable measures to protect Plaintiffs' and Class Members' Personal and Financial Information and not complying with applicable industry standards as described in detail herein.

173.    Plaintiffs' and Class Members' Personal and Financial Information constitutes personal property that was taken and misused as a proximate result of Defendant's negligence, resulting in harm, injury and damages to Plaintiffs and Class Members.

174.    As a proximate result of Defendant's negligence *per se* and breach of duties as set forth above, Plaintiffs and Class Members were caused to, *inter alia*, have their data shared with Third Parties and fourth parties without their authorization or consent, receive unwanted advertisements that reveal seeking financial advice for specific issues, fear, anxiety and worry about the status of their Personal and Financial Information, diminution in the value of their personal data for which there is a tangible value, and/or a loss of control over their Personal and Financial Information, all of which can constitute actionable actual damages.

175.    Defendant's conduct in violation of applicable laws directly and proximately caused the unauthorized access and disclosure of Plaintiffs' and Class Members' Personal and Financial Information, and as a result, Plaintiffs and Class Members have suffered and will continue to suffer damages as a result of Defendant's conduct. Plaintiffs and Class Members seek actual, and compensatory damages, and all other relief they may be entitled to as a proximate result of Defendant's negligence *per se*.

176.    Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

## COUNT III
## INVASION OF PRIVACY, INTRUSION UPON SECLUSION
### (On Behalf of Plaintiffs and the Classes)

177.    Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

178.    Plaintiffs and Class Members had a reasonable expectation of privacy in their communications with Defendant via its Website.

179.    While using Defendant's Website, Plaintiffs and Class Members communicated sensitive Personal and Financial Information that they intended for only Defendant to receive and that they understood Defendant would keep private. Plaintiffs' and Class Members' Personal and Financial Information is extremely private and not a matter of legitimate public interest.

180.    As set forth above, Defendant disclosed Plaintiffs' and the Class Members' Personal and Financial Information and confidential communications to Google and other third parties, without their authorization or knowledge.

181.    Defendant's disclosure of the substance and nature of those communications to Third Parties without the knowledge and consent of Plaintiffs and Class Members is an intentional intrusion on Plaintiffs' and Class Members' solitude or seclusion in their private affairs and concerns.

182.    Plaintiffs and Class Members had a reasonable expectation of privacy in their communications over the Website. This expectation is further reinforced given their relationship with Defendant as a financial institution. Furthermore, Defendant's Privacy Policies enforced this reasonable expectation. Moreover, Plaintiffs and Class Members have a general expectation that

their communications regarding Personal and Financial Information with their financial institution will be kept confidential.

183. Plaintiffs and Class Members reasonably expected that their private communications with the Website would not be tracked, surveilled, recorded, eavesdropped, or otherwise intruded upon, and that their confidential communications with their financial institution would remain private.

184. Defendant intentionally intruded upon Plaintiffs and Class Members' privacy by secretly recording their usage of the Website, including the Personal and Financial Information and confidential communications included therein.

185. Defendant's disclosure of Personal and Financial Information is highly offensive to the reasonable person.

186. As a result of Defendant's actions, Plaintiffs and Class Members have suffered harm and injury, including but not limited to an invasion of their privacy rights, and other injuries and damages as set forth in the preceding paragraphs.

187. Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendant's invasion of their privacy and are entitled to just compensation, including monetary damages.

188. Plaintiffs and Class Members seek appropriate relief for that injury, including but not limited to, damages that will reasonably compensate Plaintiffs and Class Members for the harm to their privacy interests as a result of its intrusions upon Plaintiffs' and Class Members' privacy.

189. Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiffs

and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

190.    Plaintiffs also seeks such other relief as the Court may deem just and proper.

### COUNT IV
### BREACH OF EXPRESS AND IMPLIED CONTRACT
### (On Behalf of Plaintiffs and the Classes)

191.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

192.    Plaintiffs and Class Members also entered into an express and implied contract with Commonwealth CU when they obtained financial services from Commonwealth CU, or otherwise provided nonpublic personal information, including Personal and Financial Information, to Commonwealth CU.

193.    As part of these transactions, Commonwealth CU explicitly and implicitly agreed to safeguard and protect Plaintiffs' and Class Members' Personal and Financial Information.

194.    Plaintiffs and Class Members entered into express and implied contracts with the reasonable expectation (based on Commonwealth CU's own express and implied promises) that Commonwealth CU would keep their nonpublic personal information, including Personal and Financial Information, confidential. Plaintiffs and Class Members believed that Commonwealth CU would use part of the monies paid to Commonwealth CU under the express and implied contracts to keep their nonpublic personal information, including Personal and Financial Information, confidential.

195.    Plaintiffs and Class Members would not have provided and entrusted their nonpublic personal information, including Personal and Financial Information, or would have paid less for Commonwealth CU's services in the absence of the express and implied contract or implied terms between them and Commonwealth CU. The safeguarding of the nonpublic personal

information, including Personal and Financial Information, of Plaintiffs and class members was critical to realize the intent of the parties.

196.    As extensively detailed above, Commonwealth CU breached its express and implied contracts with Plaintiffs and class members to protect their nonpublic personal information, including Personal and Financial Information, when it disclosed that information to Third Parties.

197.    As a direct and proximate result of Commonwealth CU's breach of express and implied contract, Plaintiffs and Class Members sustained actual losses and damages as described in detail above.

## COUNT V
## UNJUST ENRICHMENT (IN THE ALTERNATIVE TO CONTRACT CLAIMS)
### (On Behalf of Plaintiffs and the Classes)

198.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

199.    Plaintiffs and Class Members have an equitable, legal, and financial interest in their Personal and Financial Information that was conferred upon, collected by, and maintained by Defendant and that was ultimately disclosed without their consent.

200.    Plaintiffs and Class Members conferred a monetary benefit upon Defendant in the form of valuable, sensitive, personal, and financial information—Personal and Financial Information—that Defendant collected from Plaintiffs and Class Members under the guise of keeping this information private. Defendant collected, used, and disclosed this information for its own gain, for marketing purposes, and for sale or trade with Third Parties. Defendant did not share this benefit with Plaintiffs and Class Members.

201.    Plaintiffs and Class Members would not have used Defendant's services, or would have paid less for those services, if they had known that Defendant would collect, use, and disclose

their Personal and Financial Information to Third Parties or allow Third Parties (and fourth parties) to use their Personal and Financial Information.

202.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class Members.

203.    The benefits that Defendant derived from Plaintiffs and Class Members rightly belong to Plaintiffs and Class Members themselves. Under unjust enrichment principles, it would be inequitable for Defendant to retain the profit and/or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

204.    Defendant continues to benefit and profit from its retention and use of Plaintiffs' and Class Members' Personal and Financial Information, while its value to Plaintiffs and Class Members has been diminished.

205.    Plaintiffs pleads this claim separately as well as in the alternative to claims for damages under Fed. R. Civ. P. 8(a)(3), because if the Court dismisses Plaintiffs' claims for damages or enters judgment on them in favor of the Defendant, Plaintiffs' will have no adequate legal remedy. Plaintiffs makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in her other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Class Members may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action, and, if so, will lack an adequate remedy at law.

206.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds it received as a result of the conduct and the unauthorized Disclosure alleged herein.

## COUNT VI
## BAILMENT
### (On Behalf of Plaintiff and the Classes)

207.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

208.    Plaintiffs, Class Members, and Defendant contemplated a mutual benefit bailment when Plaintiffs and Class Members transmitted their Personal and Financial Information to Defendant solely for financial services and the payment thereof.

209.    Plaintiffs' and Class Members' Personal and Financial Information was transmitted to Defendant in trust for a specific and sole purpose of receiving Commonwealth CU's financial services, with an implied contract that the trust was to be faithfully executed, and the Personal and Financial Information was to be accounted for when the special purpose was accomplished.

210.    Defendant was duty bound under the law to exercise ordinary care and diligence in safeguarding Plaintiffs' and Class Members' Personal and Financial Information.

211.    Plaintiffs' and Class Members' Personal and Financial Information was used for a different purpose than Plaintiffs and Class Members intended, for a longer time period and/or in a different manner or place than the parties intended.

212.    Defendant's breach of the bailment was a legal cause of injury-in-fact and damage to Plaintiffs and Class Members, including but not limited to, the unauthorized access of their Personal and Financial Information by Third Parties, improper use of their Personal and Financial Information by Third Parties and fourth parties, improper disclosure of their Personal and Financial Information, lost benefit of their bargain, lost value of their Personal and Financial Information, and lost time and money incurred to mitigate and remediate the effects of use of their information

41

that resulted from and were caused by Defendant's tortious conduct. These injuries are ongoing, imminent, immediate, and continuing.

213.    As a direct and proximate result of Defendant's breach of the bailment, Plaintiffs and Class Members are entitled to and do demand actual, compensatory, and punitive damages, as well as injunctive relief, and all other relief allowed by law.

## COUNT VII
## VIOLATION OF THE KENTUCKY CONSUMER PROTECTION ACT, KRS § 367.110, ET SEQ.
### (On Behalf of Plaintiffs and the Class)

214.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

215.    The Kentucky Consumer Protection Act, KRS § 367.110, *et seq.,* prohibits any "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KRS § 367.170.

216.    Defendant is a "person" as defined by KRS § 367.110.

217.    By conduct set forth in the preceding paragraphs, Defendant engaged in the complained-of conduct in connection with "trade" and "commerce" with regard to "services" as defined by KRS § 367.110. Defendant advertised, offered, or sold services relating to Plaintiffs' and Class Members financial services.

218.    Plaintiffs and the Class Members purchased Defendant's financial services for personal, family or household purposes.

219.    Defendant engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with trade and commerce, including but not limited to the following:

220.    Defendant encouraged its Customers to use its Website while representing tis commitment to protecting the privacy of Personal and Financial Information. Meanwhile, Defendant shared Plaintiffs' and Class Members' Personal and Financial Information with Third Parties like Google, without Plaintiffs' and Class Members' knowledge or consent.

221.    Defendant promised that it would not use Plaintiffs' and Class Members' Personal and Financial Information for undisclosed purposes without Plaintiffs' and Class Members' permission. At the same time, Defendant knowingly collected Plaintiffs' and Class Members' Private Information and transmitted to third parties like Google, exclusively for the purpose of marketing and profits. On information and belief, Defendant then used this information to market its own services to Plaintiffs and Class Members.

222.    Plaintiffs and Class Members relied on Defendant's representations in using Commonwealth CU's Website and thought they were communicating only with their trusted financial provider. In actuality, Defendant was surreptitiously intercepting and transmitting Plaintiffs' and Class Member's communications from Plaintiffs' and Class Members' browsers directly to Third Parties like Google.

223.    Defendant's Disclosure of Plaintiffs' and Class Members' Private Information was willful, knowing, and done with intent that Plaintiffs and Class Members rely upon the concealment, suppression or omission of a material fact: that Defendant was tracking Plaintiffs' and Class Members' Personal and Financial Information, using it for advertising purposes without their permission, and disclosing that information to unauthorized third parties.

224.    Had Plaintiffs and Class Members been aware that their Private Information would be transmitted to unauthorized third parties, they would not have entered into such transactions

and would not have provided payment or confidential Personal and Financial Information to Defendant.

225.    Defendant acted intentionally, knowingly, and maliciously to violate Kentucky's Consumer Protection Act, and recklessly disregarded Plaintiffs' and Class Members' rights.

226.    As a direct and proximate result of Defendant's deceptive acts or practices, Plaintiffs and Class Members have suffered and will continue to suffer injury and damages as set forth in the preceding paragraphs, including but not limited to the loss of the value of their Personal and Financial Information, an ascertainable loss of personal property and/or monies pursuant to KRS § 367.220.

227.    Further, as a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and Class Members have suffered damages for which Defendant is liable, including, but not limited to, the following.

    a.  Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private.

    b.  Defendant eroded the essential confidential nature of the relationship Customers have with their financial institution.

    c.  Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge or informed consent and without sharing the benefit of such value.

    d.  Plaintiffs and Class Members did not get the full value of the financial services for which they paid, which included Defendant's duty to maintain confidentiality.

    e.  Defendant's actions diminished the value of Plaintiffs' and Class Members' Private Information.

228.    Defendant's violations present a continuing risk to Plaintiffs and Class Members as well as to the general public.

229.    Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, and attorneys' fees and costs.

**COUNT VIII**
**DECLARATORY JUDGMENT**
**(On Behalf of Plaintiffs and the Classes)**

230.    Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

231.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, the Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this complaint.

232.    An actual controversy has arisen regarding Commonwealth CU's present and prospective common law and other duties to keep its Customers' Personal and Financial Information confidential and whether Defendant is currently keeping that information confidential. Plaintiffs remain Commonwealth CU Customers who need to use the Commonwealth CU's Website to manage accounts and the financial services provided by Commonwealth CU. Plaintiffs and similar Class Members thus remain at imminent risk that additional disclosure of their Personal and Financial Information will occur in the future.

233.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.  Defendant continues to owe a legal duty to secure Customers' Personal and Financial Information, under the common law, Section 5 of the FTC Act, the GLBA, and various state statutes;

b.  Defendant continues to breach this legal duty by disclosing its Customers' Personal and Financial Information, to unaffiliated Third Parties.

234.  The Court also should issue corresponding prospective injunctive relief requiring Defendant to keep its nonpublic personal information, including Personal and Financial Information, confidential consistent with law and industry standards.

235.  If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, and lack an adequate legal remedy. The risk of additional disclosure is real, immediate, and substantial, as trackers remain operative on Defendant's website to this day. If additional disclosure occurs, Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

236.  The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if Commonwealth CU continues to disclose its Customers' Personal and Financial Information, Plaintiffs and Class Members will likely be subjected to the harms described herein. On the other hand, the cost to Defendant of complying with an injunction by keeping its Customers' Personal and Financial Information, confidential is relatively minimal (for example, removing trackers from its website), and Defendant has a pre-existing contractual and legal obligation to do so.

237.  Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing Commonwealth CU's

additional unlawful disclosures of Customers' Personal and Financial Information, thus eliminating the additional injuries that would result to Plaintiffs and the hundreds of thousands of Customers whose information has been and will continue to be disclosed.

**COUNT IX**
**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("ECPA")**
**18 U.S.C. §§ 2511(1), *et seq.***
**(On Behalf of Plaintiffs and the Classes)**

238.    Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

239.    The ECPA protects both sending and receipt of communications. 18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

240.    The transmissions of Plaintiffs' and Class Members' Personal and Financial Information to Defendant's Website qualifies as a "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

241.    **Electronic Communications**. The transmission of Personal and Financial Information between Plaintiffs and Class Members and Defendant's Website with which they chose to exchange communications are "transfer[s] of signs, signals, writing,…data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo optical system that affects interstate commerce" and are therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(2).

242.    **Content**. The ECPA defines content, when used with respect to electronic communications, to "include [] any information concerning the substance, purport, or meaning of that communication." *See* 18 U.S.C. § 2510(8).

243.    **Interception**. The ECPA defines the interception as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or

other device" and "contents…include any information concerning the substance, purport, or meaning of that communication." See 18 U.S.C. § 2510(4), (8).

244. **Electronic, Mechanical or Other Device**. The ECPA defines "electronic, mechanical, or other device" as "any device…which can be used to intercept a[n]…electronic communication[.]" 18 U.S.C. § 2510(5). The following constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

a. Plaintiffs' and Class Members' browsers;

b. Plaintiffs' and Class Members' computing devices;

c. Defendant's web-servers;

d. Defendant's Website; and

e. The tracking technology deployed by Defendant effectuated the sending and acquisition of customer communications.

245. By utilizing and embedding the tracking technology on its Website, Defendant intentionally intercepted, endeavored to intercept and procured another person to intercept the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a).

246. Specifically, Defendant intercepted Plaintiffs' and Class Members' electronic communications via the tracking technology which tracked, stored, and unlawfully disclosed Plaintiffs' and Class Members' Personal and Financial Information to Third Parties.

247. Defendant's intercepted communications include, but are not limited to, communications to/from Plaintiffs and Class Members regarding Personal and Financial Information.

248. By intentionally disclosing or endeavoring to disclose the electronic communications of Plaintiffs and Class Members to Third Parties, while knowing or having reason

to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(c).

249.    By intentionally using, or endeavoring to use, the contents of the electronic communications of Plaintiffs and Class Members, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a), Defendant violated 18 U.S.C. § 2511(1)(d).

250.    **Unauthorized Purpose.** Defendant intentionally intercepted the contents of Plaintiffs' and Class Members' electronic communications for the purpose of committing a tortious act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, among others.

251.    Defendant intentionally used the wire or electronic communications to increase its profit margins and save on marketing costs.

252.    Defendant specifically used tracking technology to track and to utilize Plaintiffs' and Class Members' Personal and Financial Information for financial gain.

253.    Defendant was not acting under color of law to intercept Plaintiffs' and Class Members' wire or electronic communication.

254.    Plaintiffs and Class Members did not authorize Defendant to acquire the content of their communications for purposes of invading Plaintiffs' and Class Members' privacy via the tracking technology.

255.    In sending and in acquiring the content of Plaintiffs' and Class Members' communications relating to the browsing of its Website, Defendant's purpose was tortious, criminal and designed to violate federal and state legal provisions, including as described above the following: (i) a knowing intrusion into a private, place, conversation or matter that would be

highly offensive to a reasonable person; and (ii) violation of GLBA, the FTC Act, invading Plaintiffs' and Class Members' privacy, and in breach of its fiduciary duty of confidentiality.

**COUNT X**
**VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT**
**18 U.S.C. § 2511(3)(a)**
**UNAUTHORIZED DIVULGENCE BY ELECTRONIC COMMUNICATIONS SERVICE**
**(On Behalf of Plaintiffs and the Classes)**

256.    Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

257.    The ECPA provides that "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission on that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a).

258.    **Electronic Communication Service**. An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Defendant's Website is an electronic communication service which provides to users thereof, customers of Defendant, the ability to send or receive electronic communications; in the absence of Defendant's Website, internet users could not send or receive communications regarding Plaintiffs' and Class Members' Personal and Financial Information.

259.    **Intentional Divulgence**. Defendant intentionally designed the tracking technology and was or should have been aware that, if so configured, it could divulge Plaintiffs' and Class Members' Personal and Financial Information. Upon information and belief, Defendant's divulgence of the contents of Plaintiffs' and Class Members' communications was contemporaneous with their exchange with Defendant's Website, to which they directed their communications.

260.    Defendant divulged the contents of Plaintiffs' and Class Members' electronic communications without authorization and/or consent.

261.    **Exceptions do not apply**. In addition to the exception for communications directly to an electronic communications service ("ECS")[25] or an agent of an ECS, the ECPA states that

> A person or entity providing electronic communication service to the public may divulge the contents of any such communication—
> (i) as otherwise authorized in section 2511(2)(a) or 2517 of this title;
> (ii) with the lawful consent of the originator or any addressee or intended recipient of such communication;
> (iii) to a person employed or authorized, or whose facilities are used, to forward such communication to its destination; or
> (iv) which were inadvertently obtained by the service provider and which appear to pertain to the commission of a crime, if such divulgence is made to a law enforcement agency.

U.S.C. § 2511(3)(b).

262.    Section 2511(2)(a)(i) provides:

> It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

263.    Defendant's divulgence of the contents of Plaintiffs' and Class Members' communications to Third Parties was not authorized by 18 U.S.C. § 2511(2)(a)(i) in that it was neither: (i) a necessary incident to the rendition of Defendant's service nor (ii) necessary to the protection of the rights or property of Defendant.

---

[25] An ECS is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15).

264.    Section 2517 of the ECPA relates to investigations by government officials and has no relevance here.

265.    Defendant's divulgence of the contents of Plaintiffs' and the Class Members' communications on its Website through the tracking technology was not done "with the lawful consent of the originator or any addresses or intended recipient of such communication[s]." 18 U.S.C.A. § 2511(3)(b)(ii). As alleged above: (i) Plaintiffs and Class Members did not authorize Defendant to divulge the contents of their communications and (ii) Defendant did not procure the "lawful consent" from the websites or apps with which Plaintiffs and Class Members were exchanging information.

266.    Moreover, Defendant divulged the contents of Plaintiffs' and Class Members' communications through tracking technology to individuals who are not "person[s] employed or whose facilities are used to forward such communication to its destination."

267.    The contents of Plaintiffs' and Class Members' communications did not appear to pertain to the commission of a crime and Defendant did not divulge the contents of their communications to a law enforcement agency.

268.    As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages, preliminary and other equitable or declaratory relief as may be appropriate, punitive damages in an amount to be determined by a jury and a reasonable attorney's fee and other litigation costs reasonably incurred.

### COUNT XI
### VIOLATION OF TITLE II OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT ("STORED COMMUNICATIONS ACT")
### 18 U.S.C. § 2702, *et seq.*
### (On Behalf of Plaintiffs and the Classes)

269.    Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

270.     The ECPA further provides that "a person or entity providing an electronic communication service to the public shall not knowingly divulge to any person or entity the contents of a communication while in electronic storage by that service." 18 U.S.C. § 2702(a)(1).

271.     **Electronic Communication Service**. ECPA defines "electronic communications service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Defendant intentionally procures and embeds various Plaintiffs' and Class Members' Personal and Financial Information through the tracking technology used on Defendant's Website, which qualifies as an Electronic Communication Service.

272.     **Electronic Storage**. ECPA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof" and "any storage of such communication by an electronic communication service for purposes of backup protection of such communication." 18 U.S.C. § 2510(17).

273.     Defendant stores the content of Plaintiffs' and Class Members' communications on Defendant's Website and files associated with it.

274.     When Plaintiffs or Class Members make a Website communication, the content of that communication is immediately placed into storage.

275.     Defendant knowingly divulges the contents of Plaintiffs' and Class Members' communications through the tracking technology.

276.     **Exceptions Do Not Apply**. Section 2702(b) of the Stored Communication Act provides that an electronic communication service provider

> may divulge the contents of a communication—
> (1) to an addressee or intended recipient of such communication or an agent of such addressee or intended recipient;
> (2) as otherwise authorized in Section 2517, 2511(2)(a), or 2703 of this title;

(3) with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service;
(4) to a person employed or authorized or whose facilities are used to forward such communication to its destination;
(5) as may be necessarily incident to the rendition of the service or to the protection of the rights or property of the provider of that service;
(6) to the National Center for Missing and Exploited Children, in connection with a report submitted thereto under section 2258A;
(7) to a law enforcement agency—
    (A) if the contents—
        (i) were inadvertently obtained by the service provider; and
        (ii) appear to pertain to the commission of a crime; . . .
(8) to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency; or
(9) to a foreign government pursuant to an order from a foreign government that is subject to an executive agreement that the Attorney General has determined and certified to Congress satisfies Section 2523.

277.    Defendant did not divulge the contents of Plaintiffs' and Class Members' communications to "addressees," "intended recipients," or "agents" of any such addressees or intended recipients of Plaintiffs and Class Members.

278.    Sections 2517 and 2703 of the ECPA relate to investigations by government officials and have no relevance here.

279.    Section 2511(2)(a)(i) provides:

It shall not be unlawful under this chapter for an operator of a switchboard, or an officer, employee, or agent of a provider of wire or electronic communication service, whose facilities are used in the transmission of a wire or electronic communication, to intercept, disclose, or use that communication in the normal course of his employment while engaged in any activity which is a necessary incident to the rendition of his service or to the protection of the rights or property of the provider of that service, except that a provider of wire communication service to the public shall not utilize service observing or random monitoring except for mechanical or service quality control checks.

280.    Defendant's divulgence of the contents of Plaintiffs' and Class Members' communications on its Website to Third Parties was not authorized by 18 U.S.C. § 2511(2)(a)(i)

in that it was neither: (i) a necessary incident to the rendition of the Defendant's services nor (ii) necessary to the protection of the rights or property of Defendant.

281.    Defendant's divulgence of the contents of Plaintiffs' and Class Members' customer user communications on its Website was not done "with the lawful consent of the originator or any addresses or intended recipient of such communication[s]." 18 U.S.C.A. § 2511(3)(b)(ii). As alleged above: (i) Plaintiffs and Class Members did not authorize Defendant to divulge the contents of their communications and (ii) Defendant did not procure the "lawful consent" from the websites or apps with which Plaintiffs and Class Members were exchanging information.

282.    Moreover, Defendant divulged the contents of Plaintiffs' and Class Members' communications through the tracking technology to individuals who are not "person[s] employed or whose facilities are used to forward such communication to its destination."

283.    The contents of Plaintiffs' and Class Members' communications did not appear to pertain to the commission of a crime and Defendant did not divulge the contents of their communications to a law enforcement agency.

284.    As a result of the above actions and pursuant to 18 U.S.C. § 2520, the Court may assess statutory damages, preliminary and other equitable or declaratory relief as may be appropriate, punitive damages in an amount to be determined by a jury and a reasonable attorney's fee and other litigation costs reasonably incurred.

## COUNT XII
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ("CFAA")
## 18 U.S.C. § 1030, *et seq.*
### (On Behalf of Plaintiffs and the Classes)

285.    Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

286.     Plaintiffs' and the Class Members' computers and mobile devices are, and at all relevant times have been, used for interstate communication and commerce, and are therefore "protected computers" under 18 U.S.C. § 1030(e)(2)(B).

287.     Defendant exceeded, and continues to exceed, authorized access to Plaintiffs' and the Class Members' protected computers and obtained information thereby, in violation of 18 U.S.C. § 1030(a)(2), (a)(2)(C).

288.     Defendant's conduct caused "loss to 1 or more persons during any 1-year period… aggregating at least $5,000 in value" under 18 U.S.C. § 1030(c)(4)(A)(i)(I), *inter alia*, because of the secret transmission of Plaintiffs' and the Class Members' Personal and Financial Information as set forth in detail herein, which were never intended for public consumption.

289.     Defendant's conduct also constitutes "a threat to public health or safety" under 18 U.S.C. § 1030(c)(4)(A)(i)(IV), due to the private and personally identifiable data and content of Plaintiffs and the Class Members' Personal and Financial Information and communication being made available to Defendant and Third Parties without adequate legal privacy protections.

290.     Accordingly, Plaintiffs and the Class Members are entitled to "maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g).

### COUNT XIII
### VIOLATION OF THE KENTUCKY WIRETAP ACT
### KRS § 526.010 *et seq.*
### (On Behalf of Plaintiffs and the Classes)

291.     Plaintiffs re-allege and incorporate the above allegations as if fully set forth herein.

292.     The Kentucky Wiretap Act makes it illegal for a person to "overhear, record, amplify or transmit any part of a wire or oral communication . . . by means of any electronic, mechanical or other device." KRS § 526.010.

293. "[S]tates may enact wiretapping statutes that are more restrictive than Title III, but []Title III sets the minimum requirements for all wiretapping and that none may permit wiretapping on a basis less restrictive than Title III." *United States v. Spence*, No. 1:07CR146, 2008 WL 11417828, at *15 (E.D. Tenn. Apr. 22, 2008), *aff'd sub nom. United States v. Smith*, 395 F. App'x 223 (6th Cir. 2010)

294. As explained above, Defendant's divulgence of the contents of Plaintiffs' and the Class Members' communications on its Website through the tracking technology was not done with the lawful consent of either sender or receiver.

295. Defendant intentionally recorded and/or acquired Plaintiffs' and Class Members' private electronic communications, without the consent of Plaintiffs and Class Members, using the Google tracker and similar tracking technologies on its Website.

296. Defendant intentionally recorded and/or acquired Plaintiffs' and Class Members' private electronic communications for the purpose of disclosing those communications to Third Parties without the knowledge, consent, or written authorization of Plaintiffs or Class Members.

297. Plaintiffs' and Class Members' communications with Defendant constitute private conversations, communications, and information.

298. Plaintiffs and Class Members had a reasonable expectation of privacy in their communications with Defendant via its Website.

299. Plaintiffs and Class Members communicated sensitive Personal and Financial Information that they intended for only Defendant to receive and that they understood Defendant would keep private.

300.    Plaintiffs and Class Members have a reasonable expectation that Defendant would not disclose Personal and Financial Information and confidential communications to third parties without Plaintiffs' or Class Members' authorization, consent, or knowledge.

301.    Plaintiffs and Class Members had a reasonable expectation of privacy given Defendant's representations, Privacy Policies, and the GLBA. Moreover, Plaintiffs and Class Members have a general expectation that their communications with their financial institution will be kept confidential.

302.    Plaintiffs and Class Members were unaware that their Personal and Financial Information was being surreptitiously recorded and transmitted to third parties as they communicated with Defendant through its Online Platforms.

303.    Without Plaintiffs' or Class Members' knowledge, authorization, or consent, Defendant used the tracking technologies imbedded and concealed into the source code of its Website to secretly record and transmit Plaintiffs' and Class Members' private communications to hidden Third Parties as described in the preceding paragraphs.

304.    The eavesdropping devices used in this case include, but are not limited to:

    a.    Plaintiffs' and Class Members' personal computing devices;

    b.    Plaintiffs' and Class Members' web browsers;

    c.    Plaintiffs' and Class Members' browser-managed files;

    d.    The Google tracker, and possibly other trackers;

    e.    Internet cookies;

    f.    Defendant's computing servers;

    g.    Third-party source code utilized by Defendant; and

    h.  Computer servers of Third Parties (including Google) to which Plaintiffs' and Class Members' communications were disclosed.

305.   Defendant is a "person" under the Kentucky Wiretap Act. KYS § 526.020.

306.   Defendant aided in the interception of communications between Plaintiffs and Class Members and Defendant that were redirected to and recorded by third parties without Plaintiffs' or Class Members' consent.

307.   Defendant's violation of the Kentucky Wiretap Act caused Plaintiffs and Class Members the following damages:

    a.  Sensitive and confidential information that Plaintiffs and Class Members intended to remain private is no longer private;

    b.  Defendant eroded the essential confidential nature of their relationship with trusted financial providers;

    c.  Defendant took something of value from Plaintiffs and Class Members and derived benefit therefrom without Plaintiffs' and Class Members' knowledge or informed consent and without sharing the benefit of such value;

    d.  Plaintiffs and Class Members did not get the full value of the financial services for which they paid, which included Defendant's duty to maintain confidentiality; and

    e.  Defendant's actions diminished the value of Plaintiffs' and Class Members' Personal and Financial Information;

    f.  Plaintiffs and Class Members also seek such other relief as the Court may deem equitable, legal, and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually, on behalf of themselves and all others similarly situated, prays for judgment as follows:

A.      For an Order certifying this action as a Class action and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.      For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

C.      For an award of punitive damages, as allowable by law;

D.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Personal and Financial Information and from refusing to issue prompt, complete and accurate disclosures to Plaintiffs and Class Members;

E.      For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety and to disclose with specificity the type of Personal and Financial Information compromised and unlawfully disclosed to Third Parties;

F.      For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

G.      For an Order compelling Defendant to pay for not less than three years of credit monitoring services for Plaintiffs and the Classes;

H.      For an award of reasonable attorneys' fees and costs under the laws outlined above, the common fund doctrine, and any other applicable law;

I.      Costs and any other expenses, including expert witness fees incurred by Plaintiffs in connection with this action;

J.      Pre- and post-judgment interest on any amounts awarded; and

K.      Such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves, and all others similarly situated, hereby demand a trial by jury on all issues so triable.


Dated: March 24, 2025                              Respectfully submitted,

                                                   */s/ Andrew E. Mize*
                                                   Andrew E. Mize (Ky. Bar No. 94453)
                                                   J. Gerard Stranch, IV*
                                                   Emily E. Schiller*
                                                   STRANCH, JENNINGS & GARVEY, PLLC
                                                   223 Rosa L. Parks Avenue, Suite 200
                                                   Nashville, Tennessee 37203
                                                   (615) 254-8801
                                                   (615) 255-5419 (facsimile)
                                                   amize@stranchlaw.com
                                                   gstranch@stranchlaw.com
                                                   eschiller@stranchlaw.com

                                                   Lynn A. Toops*
                                                   Amina A. Thomas*
                                                   COHEN & MALAD, LLP
                                                   One Indiana Square, Suite 1400
                                                   Indianapolis, Indiana 46204
                                                   (317) 636-6481
                                                   ltoops@cohenandmalad.com
                                                   athomas@cohenandmalad.com

                                                   Samuel J. Strauss*
                                                   Raina C. Borrelli*
                                                   STRAUSS BORRELLI, PLLC
                                                   980 N. Michigan Avenue, Suite 1610
                                                   Chicago, Indiana 60611
                                                   (872) 263-1100
                                                   (872) 263-1109 (facsimile)
                                                   sam@straussborrelli.com
                                                   raina@straussborrelli.com

                                                   * to seek admission *pro hac vice*

                                                   **Counsel for Plaintiffs and the Proposed Classes**